IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00311-MSK-KLM

FRED NULL, and
ZALE GAYLEN,

    Plaintiffs,

v.

NATIONAL ASSOCIATION OF CERTIFIED HOME INSPECTORS, a Colorado limited liability company aka NACHI Management, LLC,
INTERNATIONAL ASSOCIATION OF CERTIFIED HOME INSPECTORS, a Colorado nonprofit corporation,
NICKIFOR GROMICKO, and
REPORTS, INC., a Delaware corporation,

    Defendants.
_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants'[1] **Motion to Sequence Discovery** [Docket No. 33; Filed November 5, 2012] (the "Motion"). Plaintiffs have filed a **Response to Motion to Sequence Discovery** [Docket No. 36; Filed November 15, 2012] (the "Response"). The Court did not permit a reply. *See Minute Order* [#35].

**A.    BACKGROUND**

Plaintiffs initiated this action on February 6, 2012. *Complaint* [#1]. They allege that they obtained a default judgment for $454,333.00 against Defendant National Association

---

[1] Default was entered against Defendant National Association of Certified Home Inspectors, a Colorado limited liability company aka NACHI Management, LLC, on July 9, 2012. [#22]. Attorney Mark Cohen represents the remaining three Defendants, International Association of Certified Home Inspectors ("IACHI"), Nickifor Gromicko, and Reports, Inc.

1

of Certified Home Inspectors ("NACHI") in 2008 in the Superior Court of California, County of Napa. [#1] at 5. Plaintiffs allege that as a result of this and another judgment against NACHI issued in the United States District Court for the Middle District of Florida, NACHI transferred its assets, income stream, members and goodwill to IACHI. *Id.* They allege that NACHI and Defendant Gromicko made these transfers with the intent to defraud NACHI's creditors. *Id.* at 6. They also allege that before and after the transfers to IACHI, Gromicko, NACHI and IACHI repeatedly transferred substantial parts of their revenue to Defendant Reports, Inc., which then transferred funds to Gromicko and his family members *Id.* at 8. For their claims for relief, Plaintiffs first allege that the transfers from NACHI to IACHI, along with the transfers from NACHI and IACHI to Reports, Inc., Gromicko, and his family members, were fraudulent transfers as defined in the Colorado Uniform Fraudulent Transfer Act. *Id.* at 8-9. Second, Plaintiffs alleged that the Defendants conspired to defraud NACHI's creditors, including Plaintiffs.

**B.    ARGUMENT AND ANALYSIS**

Defendants argue in the Motion that absent any proof that NACHI's assets were fraudulently transferred, the private financial information Plaintiffs are seeking in their discovery requests is not relevant. [#33] at 3. They contend that Plaintiffs do not have a judgment against Gromicko, IACHI, Reports, Inc. or any of Gromicko's family members and thus their financial information is not discoverable unless Plaintiffs can show evidence of fraudulent transfers. *Id.* Defendants further argue that allowing discovery of such financial information would "violate their expectations of privacy and result in an unnecessary and costly discovery effort" based on "flimsy" allegations of a scheme to fraudulently transfer NACHI's assets. *Id.* at 3-4. Therefore, Defendants ask the Court to limit discovery at this

time to: 1) the relationship between NACHI and the other Defendants; 2) the transactions, if any between NACHI and the other Defendants; and 3) NACHI's past and present assets and their value, if any.  *Id.* at 8.

In the Response, Plaintiffs present a history of the relationship between NACHI and IACHI along with other facts that they contend support their causes of action. [#36] at 1-10. For example, they attach a summary of tax return information showing that in 2007, NACHI's revenue was $1,344,510.00 while IACHI's revenue was $0.  *Id.* at 6-7 (citing #36-14).  By 2009, NACHI reported no income while IACHI's revenue was $1,531,989.00.  *Id.* Plaintiffs argue that the information in the tax returns must have a source and that they are entitled to see the bank records and other business documents that would explain the numbers in the tax returns.  *Id.* at 13.

Plaintiffs argue that Defendants' request to bifurcate discovery is impractical and an unjust resolution to Defendants' refusal to produce the discovery requested.  *Id.* at 16. Plaintiffs contend that in order for their expert to determine what was transferred to IACHI, "he must have the financial information to evaluate the income stream, the amounts necessarily expended to run the operation, and the amounts transferred to its owner as 'profit.'" *Id.* at 16-17.  They argue that contrary to Defendants' argument, they should not have to first prove their claim of fraudulent transfers before they are entitled to the very financial records that they contend would establish their claim.  *Id.* at 17.

Although presented as a motion to bifurcate discovery, the underlying issue here is whether Defendants should be required to respond to Plaintiff's discovery requests for financial information. Generally, the test for allowing discovery of information or documents is whether the information "is relevant to any party's claim or defense."  Fed. R. Civ. P.

26(b)(1). This is a deliberately broad standard which is meant to allow the parties to discover the information necessary to prove or disprove their cases. *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995); *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 356 (D. Colo. 2004); *Cardenas v. Dorel Juvenile Group, Inc.*, 232 F.R.D. 377, 382 (D. Kan. 2005) ("Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." (citations omitted)). If the material sought is relevant to the case and may lead to admissible evidence, it should generally be produced. *See* Fed. R. Civ. P. 26(b)(1). However, where the burden of producing relevant discovery outweighs the likely benefit, the Court has discretion to limit the discovery requested. Fed. R. Civ. P. 26(b)(2)(C); *see Qwest Commc'ns Int'l v. Worldquest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003). The objecting party bears the burden to show why a discovery request is objectionable, and that burden cannot be sustained merely by asserting "boilerplate claims that the requested discovery is oppressive, burdensome or harassing." *Klesch & Co. v. Liberty Media Corp.*, 217 F.R.D. 517, 524 (D. Colo. 2003).

While the Court recognizes, as Defendants argue, that it has the discretion to determine the "timing, sequence and volume of discovery," *Qwest Communications Intern., Inc. V. WorldQuest*, 213 F.R.D. 418, 419 (D.Colo. 2003), it finds no basis to alter the sequence of discovery here. Defendants offer no legal authority to support their argument that Plaintiffs must first show that assets were fraudulently transferred before Defendants can be required to disclose their financial information. Moreover, the limited information that Defendants have disclosed thus far, including the information in the tax returns, raises sufficient questions to warrant discovery of Defendants' financial information. Thus,

Defendants' contention that their financial information is not relevant at this time because Plaintiffs have not shown evidence of fraudulent transfers is without merit. The Court finds that the requests for Defendants' financial information are relevant to Plaintiffs' fraudulent transfer and conspiracy claims and that Plaintiffs may proceed with discovery of such information.[2] The Court having found no basis to alter the sequence of discovery in this case,

IT IS HEREBY **ORDERED** that the Motion [#33] is **DENIED**.

Dated: November 16, 2012

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge

---

[2] The parties shall use this Court's telephonic discovery dispute procedure if other disputes arise pertaining to Plaintiffs' discovery requests.